ATLANTIC SHORES CORPORATION, a Florida Corporation, *Appellant,* vs. OLOF ZETTERLUND and JEANNETTE ZETTERLUND, *Appellees.*

138 So. 50.

Division B.

Opinion filed December 1, 1931.

Petition for rehearing denied January 13, 1932.

762

*Loftin, Stokes & Calkin,* of Miami, for Appellant;
*Benson, McGarry & Sullivan,* of Miami, for Appellees.
DAVIS, J.—On February 2, 1928, Zetterlund and his

wife filed their bill of complaint in the Circuit Court of Broward County to foreclose a purchase money mortgage. Atlantic Shores Corporation, the purchaser, and several hundred persons who had acquired rights in the lands, were named as parties defendant to the suit. The bill set up an indebtedness on the mortgage of $2,653,517.30, with interest from November 29, 1928. The original purchase price of the land is shown to have been three million and twenty-five hundred dollars.

The foreclosure was sought prior to the natural due dates of installments of the mortgage indebtedness, which was represented by fifty-one notes representing partial payments. The basis of the right to foreclose was the invocation by complainants of an acceleration clause contained in the mortgage.

The mortgage security consisted of some eight hundred acres of land, seventy per cent of which are shown to have been partly submerged or swampy and all of which were at the time of the purchase wild, unimproved and unoccupied.

After acquiring these lands, the Atlantic Shores Corporation cleared and graded a substantial portion of the lands and made the same suitable for habitation. It did a considerable amount of dredging, built dikes and otherwise made permanent improvements on the property which increased it in value. It caused the lands to be subdivided into lots and blocks and laid out streets thereon, put in roads and bridges at places where they were needed, built walks, placed lighting posts, planted trees, made terraces and christened the enterprise with the name of "Atlantic Shores".

The mortgage in question contained a recital to the effect that the mortgagor was going to subdivide the property and make a plat of it, and sell lots therefrom, for which releases were to be obtained from time to time, on the terms and conditions specified in the mortgage.

Originally the mortgaged premises were sold by the mortgagees to the mortgagor for $3,500,000.00. The same land was later purchased by the mortgagee-vendors at the foreclosure sale for $200,000.00. Between the date of the original sale and the ultimate foreclosure, large sums of money aggregating $1,107,398.38, are alleged to have been paid over to the mortgagee-vendor for principal and interest on the purchase price.

The appeal here is from the final decree and the subsequent order of the court by which a deficiency decree was entered against the Atlantic Shores Corporation for $2,834,249.09.

The assignments of error question the action of the chancellor in striking a part of the answer interposed by way of affirmative defense, and challenge the correctness of his action in entering a deficiency decree for $2,834,249.09 after having stricken the portion of the defendant's answer referred to.

That portion of the answer which was stricken by the Circuit Judge set up that the complainant in the suit, who was the vendor of the property, tried to bring about the early foreclosure of the mortgage by preventing lot purchasers from the defendant from completing payments on their contracts; this they were charged with having done by representations that the Atlantic Shores Corporation would not be able to put the improvements on the property that it had agreed with said purchasers to put there, and would not be able to pay off the mortgage, in consequence of which complainant would invoke the right to foreclose the mortgage and destroy the subdivision insofar as releases had not been obtained, and thereby destroy the rights of such lot purchasers.

It was alleged that because of this the defendant's lot purchasers discontinued payments on their installment contracts and as a result that the Atlantic Shores Corporation was damaged to the extent of $3,000,000.00 and was

rendered powerless to meet its payments on the mortgage sought to be foreclosed. Affirmative relief was prayed for.

The appellant here, who was the answering defendant below whose answer in part was stricken as aforesaid, contends that it was error for the chancellor to strike this portion of the answer for the reason that the stricken portion of the answer had a direct, material and pertinent bearing on a part of the relief sought by the complainant's bill, namely, the deficiency decree which was specially prayed for in one paragraph of the prayer, even if the answer was otherwise insufficient as a defense to the foreclosure suit itself.

There is nothing in the answer which warrants an inference that the stricken portion was intended solely as a defense against the foreclosure, so its bearing, if any, was obviously on some other phase of the case.

It is evident, moreover, from the grounds stated in the motion to strike and from the ruling of the chancellor granting such motion, that the stricken portion of the answer was so stricken by the Chancellor because it was not regarded by him as a sufficient defense to the foreclosure, or as a sufficient legal basis for substantive affirmative relief by way of decree in favor of the defendant for the damages referred to as having been caused by the activities of the complainant.

That such was evidently the reason for striking it, is confirmed by the argument made in appellee's brief and in his oral argument here attempting to justify such action on the ground that the stricken matter considered either as standing alone or in connection with the entire remainder of the answer was ''wholly lacking in the essential requirement of an adequate defense to the bill of complaint.''

But if the matter in question was pertinent as an answer to resist the granting of a deficiency decree in the case, or as a ground for asking that if the court did grant a deficiency decree, that such decree be granted for a less

amount than was actually granted, because of equitable considerations requiring that course, it was not essential that such allegations of the answer should constitute a defense to the foreclosure or amount to a complete answer to the merits of the bill.

This court is committed to the rule, as expressed in Realty Mortgage Co. v. Moore, 80 Fla. 2, 85 So. 155, that a mortgagee, in a mortgage foreclosure, where the mortgaged property did not sell for a sufficient sum to satisfy the decree, does not have the absolute and unqualified *right to demand* that a sufficiency decree be rendered in his favor for any balance that may be found to be due to the plaintiff over and above the proceeds of the sale of the mortgaged property, but that the mortgagee's right to a deficiency decree *depends on the facts and circumstances in each case,* and that the power exercised by the chancellor in granting such a decree is a discretionary one that may be exercised or not as the court deems best when it has considered such facts and circumstances.

In Etter v. State Bank of Florida, 76 Fla. 203, 79 So. 724, it was pointed out by MR. JUSTICE ELLIS that any defense that may be offered against a deficiency decree against a mortgagor personally liable for the debt in a foreclosure proceeding should be presented in due course during the proceedings, or sufficient reason given for not doing so. In that case it was also held that:

> "The rule providing for the entry of deficiency judgments in a suit in equity to foreclose a mortgage rests upon the general rule that where a court of equity obtains jurisdiction of an action, it will retain it and administer full relief, both legal and equitable, as far as it pertains to the same transactions or the same subject matter. Thus the parties are relieved from the expense and vexation of two suits, one equitable and the other legal."

Therefore, when a foreclosure proceeding is brought against a party personally liable for the mortgage debt,

and the complainant asks for a personal judgment for a deficiency which may exist after the foreclosure sale, the granting of his prayer is discretionary, and the exercise of the power to grant such prayer involves in the main two considerations: (1) whether the equity court, under the facts and circumstances of the case, will enter upon the legal inquiry at all; (2) how far the equity court will in the equity suit deal with the legal claim and allow it by way of a personal decree against the defendant. This latter phase involves the decision of the chancellor as to whether the court of equity may conscientiously under the facts and circumstances allow a judgment for the *whole* of the deficiency or permit judgment to be taken only for a part or none of it.

On the other hand, if the equity court refuses to enter upon the legal phase of the case at all, and without going into the equities of the prayer for the granting of a deficiency decree, refuses to entertain that phase of the case, the result is a refusal of the chancellor to exercise jurisdiction at all in the particular case, and in consequence, a suit at law is permitted to be brought and maintained for the deficiency that the equity court refused to allow in the equity proceeding, because the claim was a legal one which the equity court had determined was one which, under equitable considerations and principles, should not be dealt with, though permissible to be dealt with at the chancellor's discretion. See Gober v. Braddock, 131 So. 407, 100 Fla. 1406.

But, where the chancellor does not just merely refuse to entertain the prayer for deficiency by refusing to enter upon the legal aspects of the case at all, and on the contrary, does entertain such prayer and hears and considers pleadings and evidence for and against the entry of such a decree, or concerning the amount of it, if one is to be entered, the decision of the chancellor, as has been so ably pointed out by MR. JUSTICE BROWN in Cragin v.

Ocean & Lake Realty Co., 101 Fla. 1324, 133 Sou. 569, also 101 Fla. 1337, 135 So. 795, then becomes the equivalent of a judgment in a common law action and is *res judicata,* and whatever error may have been committed in the decree rendered, is subject to redress and correction only by a direct appeal in the pending cause.

The reason for this has also been pointed out in the case just cited. As MR. JUSTICE BROWN observes in the last reported opinion in that case appearing in 135 Sou. Rep. at page 797 of the text (101 Fla. 1342):

"He (the complainant) was not compelled to submit the adjudication of this question to a court of equity, but, if he did so, he would have been bound by its decision, subject only to his right of appeal where such discretion was abused. The discretion invested is not an absolute and unbridled discretion, but a 'sound judicial discretion' which must be supported by established equitable principles as applied to the facts of the case, and the exercise of which is subject to review on appeal."

Thus we see that in foreclosing a mortgage, the mortgagee when proceeding against the mortgagor as one personally liable for the debt, and asking for a deficiency judgment in addition to a decree of foreclosure and sale of the mortgaged property, is deemed to have elected to invoke the exercise of the powers of a court of chancery to deal with a purely legal claim as and incident to the equitable one of foreclosure, and when complainant so elects to proceed in a court of equity for the recovery of his legal demand, he is deemed to have acquiesced that his legal claim shall be considered and disposed of not merely on purely legal principles only, but also upon equitable principles as well, which equitable principles when applied to the particular facts and circumstances may cause the chancellor not to award any deficiency judgment at all because to do so would be wholly *inequitable,* or if one *is* awarded, may cause him to materially reduce the amount

of same on *equitable* principles, as, for example, was done in Cragin v. Ocean & Lake Realty Company where the deficiency was allowed for only $50,000.00 whereas its actual amount was $900,000.00.

What then are the equitable principles which will control the exercise of the chancellor's discretion in a matter of this kind?

It was argued orally at the bar in this case that to say that a matter of this kind is *discretionary*, is to say that the granting or withholding of the power is a matter of personal choice residing in the chancellor. Accordingly, it has been suggested that the matter should not be regarded as *discretionary* at all within the true meaning of that term, since to recognize it as such would tend to make the exercise of this important prerogative not a judgment of the law but a judgment of men, which would be contrary to the tenets of our system of jurisprudence to the effect that we must be controlled by the judgment of the law, not the judgment of the individuals exercising power.

Such argument, however, has always been made with regard to the exercise of equity powers, it having been originally argued in derogation of them that no one could accurately gauge the measure of the chancellor's foot under such a rule since one chancellor's foot would be long and another short in applying it.

Notwithstanding these criticisms, chancellors have nevertheless continued to exercise equity powers denominated by them as subject to their sound judicial discretion in a continually broadening field of jurisdiction, the most familiar example of which is found in the cases decided concerning the granting of specific performance.

We therefore see no substantial difficulty to be encountered, nor any uncertainty of the administration of the law to be brought about, by the recognition in cases of this kind of the power of the chancellor to grant or withhold a deficiency judgment, in whole or in part, on equit-

able principles analagous to those which have been recognized as controlling the exercise of the powers of equity courts in granting the specific performance and other kinds of discretionary relief.

In the case now before the court it appears that the portion of the answer which was stricken, if heard and considered by the court in connection with complainant's prayer for a deficiency judgment, might have had some influence on the conscience of the chancellor in determining whether an equity court would deal with the legal aspect of the complainant's demand, and if so, how far it would act in recognition of it. .

Such answer was confessedly not a good defense to the foreclosure of the mortgage, nor can it be considered as such a counterclaim or set-off as would be cognizable in equity as the basis for a judgment or decree of substantive character against the complainant.

But if it was not wholly impertinent and irrelevant, and if left in the record, would have had some bearing on the character and extent of the relief sought by the complainant's bill, it was not such as ought to have been stricken, inasmuch as an answer of this kind can only avail a defendant as far as in law and equity it ought to avail him. See Easterly v. Wildman, 87 Fla. 73, 99 So. 359, and cases cited.

Furthermore, since the deficiency decree entered in this cause was evidently rendered on the theory that it was a matter of absolute legal right in the complainant, and that only a strictly maintainable legal defense would avoid it in equity under the same conditions as would avoid such a recovery if the suit were at law, it is apparent that the chancellor in so proceeding did so on an erroneous theory which has possibly resulted in injury to the defendant under the circumstances.

In Schmitt v. Bethea, 78 Fla. 304, 82 So. 817, it was stated by MR. JUSTICE ELLIS that

"Where the chancellor's findings of fact result from a misconception of the rules of evidence and their application to the facts offered in evidence, a decree in accordance with such findings which is harmful to the appellant will be reversed."

In this case it appears that the chancellor misconceived the nature of what was attempted to be asserted by the defendant and thereby denied to the defendant the benefit of the consideration of pleading and proofs which, if considered, might have resulted in a denial of the deficiency decree in whole or in part.

It also appears that since the deficiency decree was entered in this case several expressions concerning the law applicable to the rendition of such decrees have been enunciated by this Court which have materially explained and settled the principles and the procedure applicable to such matters, as well as the effect thereof as adjudications.

We therefore conclude, without expressing any opinion as to the merits of the appellant's right to have a deficiency decree denied in whole or in part under the circumstances, that justice will be subserved by a reversal of the decree appealed from and a remand of the cause for further proceedings in accordance with this and previous opinions of this Court dealing with deficiency judgments.

We are reinforced in this conclusion by the fact, also shown by the record, that there was such a apparent irregularity, if not illegality, in the conduct of the foreclosure sale as to raise a doubt whether or not the extremely low price of $200,000.00 realized for the property was not to some degree influenced thereby. But as to this feature, we are not convinced such irregularity has been so prejudicial as to constitute reversible error, therefore, we do not reverse the decree of confirmation of the sale but only that part of it relating to the award of a deficiency judgment, which should be remanded to the court below for such further pleadings and procedure regarding the claim

for deficiency as may be according to law and equity practice.

Deficiency decree reversed and cause remanded for further proceedings in regard thereto.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.