EDGAR W. WAYBRIGHT v. D. W. TURNER.

176 So. 424.
Division B.
Opinion Filed September 22, 1937.
On Petition for Rehearing October 28, 1937.

*Carlton C. Arnow,* for Appellant;

*W. E. Baker* and *Baxter & Clayton,* for Appellee.

PER CURIAM.—Waybright appeals from an order striking all of his answer to D. W. Turner's petition, claiming part of a surplus fund held in the court's registry and arising from foreclosure of a mortgage on certain property herein referred to as the "Waybright property," except that portion of the answer alleging that the price bid at the foreclosure sale of certain other property known as the "Colclough property," which sale price had been confirmed by the court, was not the fair market value of said property at the time and place of said sale, and further ordering the parties to appear at a certain time to present their evidence on the latter point.

After a first mortgage held by the Connecticut General Life Insurance Company on certain property referred to in this opinion as the "Waybright property" had been foreclosed and satisfied in full, there remained in the registry of the court a surplus of $10,481.43. The Chancellor on August 3, 1935, entered an order requiring that Lucille Colclough Vairns, as Administratrix of the Estate of Olive C. Colclough, deceased, file within ten days her bill of com-

plaint setting forth her claim, if any, to the surplus fund, and that D. W. Turner and Edgar W. Waybright plead to the bill of complaint within ten days thereafter.

The record does not show whether or not the bill of complaint of Lucille Colclough was ever filed, or if filed what became of it.

The next proceeding in the cause as shown by the record, was the amended petition of D. W. Turner, filed June 12, 1936, praying that he be paid from the surplus in the registry of the court, resulting from the foreclosure of the mortgage in the case of The Connecticut General Life Insurance Co. v. The Plaza Theater Co., the sum of $9,923.99.

The petition alleged that in pursuance of certain orders or decrees of the court dated May 1, 1936 (neither of which appears in the record), petitioner claimed the surplus accruing from the foreclosure sale together with interest; that petitioner was a defendant in said foreclosure because he was the owner and holder of a mortgage made by Olive C. Colclough and the Plaza Theater Co., dated November 6, 1929, to W. R. Thomas, covering certain lands owned by Olive C. Colclough (known as the "Colclough property") as a first mortgage, and covering certain lands owned by the Plaza Theater Co. (known as the "Waybright property") as a second mortgage, which mortgage was assigned to petitioner by W. R. Thomas, on March 6, 1930, for value, before maturity and without notice of any infirmities; that on September 12, 1934, the Connecticut General Life Insurance Co., the owner and holder, by assignment from the Baldwin Mortgage Co., of a first mortgage on the "Waybright property," filed its bill to foreclose said mortgage, and petitioner as owner and holder of a second mortgage on said lands was made a defendant; that said foreclosure suit was prosecuted to final decree and said property was sold

at the foreclosure sale for $35,800.00; that the amount of the final decree was $26,469.87, which left a surplus of $10,481.43, which surplus was then in the registry of the court; that after institution of this foreclosure suit, petioner filed his bill of complaint to foreclose his first mortgage on the "Colclough property"; that he obtained final decree of foreclosure against said property; that thereafter on the first Monday in June, 1935, said property was sold at foreclosure sale to petitioner for $3,250.00, being the best bid therefor, said amount being credited on the amount of the final decree, and said sale being confirmed by the court; that there is still due petitioner under said mortgage the sum of $9,923.99 with interest thereon, which sum is secured by the lien of petitioner's second mortgage on the property formerly held and owned by the Plaza Theater Co. (the "Waybright property") which lien is superior to all other liens against said property and the rights of the holder of the equity of redemption; that said lien has been transferred to the surplus fund arising from foreclosure of the first mortgage thereon; that petitioner is entitled to have $9,923.99, with interest, which is still due and owing to him under his mortgage, satisfied out of said surplus fund now in the registry of the court; that petitioner was entitled to have an order directing the clerk to pay him this sum.

Motion to strike portions of the amended petition and motion to dismiss the amended petition were made.

The court denied the motion to dismiss, and granted the motion to strike an immaterial part of the amended petition which was not necessary to establish the claim to the surplus fund.

Edgar W. Waybright answered the petition, alleging that he owned in fee simple the "Waybright property," free from all encumbrances except a mortgage to the Connecti-

cut General Life Insurance Co., which mortgage was fully paid out of the proceeds from the sale of said property on foreclosure before the surplus was paid into the registry of the court; that he, Waybright, was entitled to the surplus because Turner's mortgage was satisfied before the surplus arose; that the deficiency on Turner's note and mortgage does not amount to $9,923.99; that Turner did not receive his note and mortgage without notice of the infirmities in the title of the assignor; that said note and mortgage had been executed to W. R. Thomas to secure him against loss because of his endorsement upon a note for approximately $8,500.00, at the Phifer State Bank, the proceeds of which had been used to pay off a prior existing mortgage of Olive C. Colclough upon the "Colclough property"; that said note at the Phifer State Bank was fully paid and discharged and W. R. Thomas did not suffer any loss by reason of his endorsement thereon; that the amended petition is based upon the mortgage and not upon the note, and the mortgage is subject to all defenses which might have been asserted against it in the hands of W. R. Thomas, regardless of whether or not Turner had notice of the infirmities in the title of Thomas, that Turner did not pay $10,000.00, but only $8,500.00 for said note and mortgage, and even though he be protected as a *bona fide* holder for valuable consideration, it would be only to the extent of the consideration paid for the same; that Turner, the petitioner, in foreclosing his mortgage on the "Colclough property" prayed for a deficiency decree, but neither Edgar W. Waybright, the Plaza Theater Co., or the Trio Realty Co. were made parties to said suit; that final decree was rendered in said suit and the property ordered sold; that petitioner bid in said property at said sale, but he bid it in at a price which did not represent its true value; that it is worth much in

excess of said bid, being worth $14,000.00 and defendant is not bound by said bid; that if the real value of said property was credited upon the indebtedness, petitioner would not have been entitled to a deficiency decree in any amount; that the confirmation of sale did not contain any deficiency decree as prayed for in the bill of complaint; that this was an act that would discharge a simple contract, and it thereby discharged said indebtedness.

The answer concluded with a prayer that Edgar W. Waybright be paid the entire sum of $10,481.43, being held in the registry of the court, together with his costs expended in the matter.

Motion to dismiss and motion to strike the answer of Edgar W. Waybright were filed.

The court granted the motion to strike all of Waybright's answer except that part alleging that the price bid at the sale of the "Colclough property," which was later confirmed by the court in a proceeding to which Waybright was not a party, was not the fair market value of said property at the time and place of said sale; and ordered that D. W. Turner and Edgar W. Waybright appear before the court on August 7, 1936, at 10:00 o'clock A. M., and produce evidence, if any they had, concerning the value of said property at said time and place.

From this order of the Chancellor, Edgar W. Waybright took an appeal. Without taking cross appeal D. W. Turner cross assigned as error that portion of the order allowing the remaining portion of said answer to stand and requiring the parties to produce their evidence.

It is contended in the first three questions presented that because of the absence of a deficiency decree in the proceedings foreclosing the mortgage on the "Colclough property," the final decree and the confirmation of sale had the

effect of a final judgment upon the claim of indebtedness, rendering any further action on the indebtedness *res adjudicata;* that the payment of the $3,250.00 thereon fully satisfied the liability of all parties on the indebtedness and thereby destroyed the lien of the mortgage on any other property; that because of such fact, it also destroyed the lien of the mortgage on the surplus fund.

In his bill to foreclose the mortgage on the "Colclough property," D. W. Turner prayed for a deficiency decree, but the court did not render one. Instead, the Chancellor decreed that if the price of the property realized at the foreclosure sale should not be sufficient to pay in full the amount of the final decree, the balance remaining unpaid should be and continue a lien upon the "Waybright property," superior to all other liens except a first mortgage held by the Connecticut General Life Insurance Co., taxes, costs and solicitor's fees.

The confirmation decree held the unpaid balance of $9,923.99 to be a valid second lien on the "Waybright property." But the court had no authority to enter that part of the decree holding the unpaid balance to be a second lien on such property because the property was not included in this particular proceeding and therefore the court did not have jurisdiction of the *res.* Those who were interested in the "Waybright property" were not made parties to this cause, consequently that part of the decree is no estoppel as against persons not parties to it, or parties in privity with those bound by its provisions.

There is no reason for authorizing deficiency decrees except for the purpose of providing a judgment for the balance due without the expense and inconvenience of an additional suit at law. Younghusband v. Fort Pierce Bank & Trust Co., 100 Fla. 1088, 130 Sou. Rep. 725.

"It is a rather serious undertaking for the Legislature or any court to say in effect that one holding a valid obligation, upon which an amount is judicially ascertained to be due, may not recover the full amount because some judge, in the 'exercise of a sound judicial discretion' in a foreclosure proceeding refuses to enter a deficiency decree for the difference between the proceeds of the sale after deducting the costs and the amount called for by the final decree." Gober v. Braddock, 100 Fla. 1406, 131 So. 407.

The holder of a mortgage who has obtained a deficiency decree in a mortgage foreclosure suit cannot maintain a suit at law for the deficiency on the note. Cragin v. Ocean & Lake Realty Co., 101 Fla. 1337, 135 Sou. Rep. 795. The statute, Section 5751 C. G. L., does not prevent the enforcement of an action at law of the debt secured by the mortgage, nor does it prevent the recovery of a deficiency at law after foreclosure of the mortgage. Gober v. Braddock, 100 Fla. 1406, 131 Sou. Rep. 407. Where an equity court refuses to enter upon the legal phase of the case, and without going into the equities of the prayer for the granting of a deficiency decree, refuses to entertain that phase of the case, the result is a refusal of the Chancellor to exercise jurisdiction at all in the particular matter, and an action at law may be brought for the deficiency. Atlantic Shores Corp. v. Zetterlund, 103 Fla. 761, 138 Sou. Rep. 50.

In this case mortgagee Turner had one mortgage on two pieces of property. It was a first mortgage on the "Colclough property" and a second mortgage on the "Waybright property." In addition to his action at law for the deficiency, the mortgagee had the option of either first foreclosing his first mortgage on the "Colclough property" or of paying off the first mortgage on the "Waybright property," then being subrogated to the rights of the first mort-

gagee and thereafter foreclosing his mortgage thereon. The foreclosure of the mortgage against the one piece of property would not prevent the foreclosure of the same mortgage against the other piece of property, so long as the debt was not fully satisfied by the first foreclosure. The Prudence Co. v. Garvin, 118 Fla. 96, 160 Sou. Rep. 7.

In foreclosing the first mortgage of the Connecticut General Life Insurance Co. on the "Waybright property," the Chancellor made no provision in the final decree or confirmation of sale, as to how the surplus should be paid out. But he later ordered that the parties proceed to show their respective claims to the surplus fund by bill of complaint and answers or petitions.

The lien of Turner's second mortgage was not destroyed by the foreclosure of the first mortgage on the "Waybright property," but was merely removed from the land. After removal from the land, it then attached to what had taken the place of the land in the eyes of the law, to-wit, whatever remained as surplus after paying off the first mortgage and costs. The amount resulting from the foreclosure being in excess of what was necessary to satisfy the first mortgage and all costs in connection with the foreclosure, was subject to all junior liens and claims that were upon the land at the time of the foreclosure.

"In determining who is entitled to surplus proceeds arising in a foreclosure sale, it is the general rule that all incumbrances on mortgaged premises inferior to the mortgage on which the sale is based, must be paid in the order of time in which they respectively became liens, except as some equitable right demands a different order of payment." 2 Wiltsie on Mortgage Foreclosures (4th Ed.) 1240, Sec. 977.

Thus the surplus fund was liable for payment of the

second mortgage held by D. W. Turner on the "Waybright property," provided there were no claims or liens of superior dignity, or no equitable circumstances to warrant a different order of payment.

It is contended that the act of D. W. Turner in praying for a deficiency decree and not pursuing it to a final decree was such an act as discharged the liability of the joint and several obligors on the indebtedness.

The statute, Section 5751 C. G. L., provides that the entry of a deficiency decree in a mortgage foreclosure shall be in the sound judicial discretion of the chancellor. Failure to grant the prayer for a deficiency decree may be deemed a declination of the court to exercise its jurisdiction to enter such decree. See: Cragin v. Ocean & Lake Realty Co., 101 Fla. 1337, 135 Sou. Rep. 795. It will be considered as a declination to exercise jurisdiction over the matter in this case.

The fifth question presents the contention that the court erred in striking that portion of Waybright's answer which set up as a defense the fact that the note and mortgage by which Turner claimed priority to the surplus fund were given by Olive C. Colclough and the Plaza Theater Co. to W. R. Thomas to secure Thomas against loss for his endorsement upon another note, which latter note was discharged without loss to Thomas, and the former note and mortgage were, for another purpose, assigned to Turner, who had notice of the infirmity in the title of Thomas.

The consideration given for the note and mortgage cannot be raised in this case because that issue was disposed of in the case foreclosing the mortgage on the "Colclough property."

Therefore the action of the court in striking that part of Waybright's answer setting up that contention cannot be

said to be erroneous because in the suit to foreclose the mortgage on the "Colclough property" the same note and mortgage were before the court, and the court there decreed as follows:

"There is now due from the defendant Olive C. Colclough to the complainant, D. W. Turner, for principal on said note and mortgage the sum of $10,000.00; for interest thereon to this date the sum of $2,516.31; for cost of abstract $12.50 and for a reasonable fee for complainant's solicitor herein, which is hereby allowed, the sum of $500.00; said amounts aggregating the sum of $13,028.81."

This was an adjudication on the merits that the indebtedness found in the final decree was owed on the note and mortgage, which were adjudicated to be valid obligations. That issue having been once determined by a decree binding upon the mortgagor involved in that proceeding cannot be reopened and relitigated by a party claiming under or in subordination to such mortgagor.

It is contended by appellee that the portion of the order, cross assigned as error, requiring the parties to introduce whatever evidence they may have, regarding the inadequacy of the price bid for the "Colclough property" at the foreclosure sale, was erroneous.

Waybright's answer alleged the insufficiency of the price bid at the foreclosure sale of the "Colclough property" in the following manner:

"Waybright admits the sale of said property pursuant to said decree and its purchase by the petitioner Turner at the price alleged in said paragraph and the credit upon the decree of the amount therein alleged, but avers that the said Waybright was not a party to said suit and had no knowledge of said foreclosure sale or said bid, and further avers that said property was bid in by the said D. W.

Turner at a price which did not represent its true and real value, and that said property acquired by the said D. W. Turner was and is worth much in excess of said bid and that it is worth the sum of fourteen thousand dollars, and the said Waybright avers that he is not bound by the value of said property as fixed and determined by said proceedings and that if the true and real value of said property was credited upon the true and real amount of the indebtedness then owing to the said D. W. Turner, he would not have been entitled to any deficiency dcreee for any sum whatsoever, and the said Waybright avers that the said D. W. Turner has received payment on the said property for the true amount of his said indebtedness."

This Court in the case of Ruff v. Guaranty Title & Trust Co., 99 Fla. 197, 126 Sou. Rep. 383, quoted with approval the following from 16 R. C. L. 100:

"It is by no means a matter of discretion with the court to rescind a sale which it has once confirmed, nor is the sale to be rescinded for mere inadequacy of price, or for an increase of price alone, irregularity, and the like. Some special ground must be laid such as fraud and collusion, accident, mutual mistake, breach of trust, or, misconduct upon the part of the purchaser, or other party connected with the sale, which has worked injustice to the party complaining and was unknown to him at the time the sale was confirmed."

This Court said further in the same opinion:

"This Court has held that the general rule is that mere inadequacy of price is not sufficient to set aside a judicial sale, but 'where such inadequacy is connected with or shown to result from any mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be set aside.' "

In the present case, however, it appears that Waybright

was not a party to the suit in which the challenged judicial sale was ordered and confirmed, nor did he have knowledge thereof, so the foregoing rule is not applicable to the equity asserted by the answer of Waybright. The allegations of Waybright's answer were sufficient to warrant the Chancellor in ordering the parties at a certain time to present their evidence concerning the alleged insufficiency of the Turner bid for the "Colclough property." So there was no error in refusing to strike this portion of the Waybright answer, so the cross assignment of error is not sustained.

The orders appealed from are affirmed and the cause remanded for further appropriate proceedings consistent with the views herein expressed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

## ON REHEARING

ELLIS, C. J.—I think that an order should be made in this case that, while the petition for a rehearing is a violation of the rule against incorporating an argument in the petition, nevertheless, the petition brings to the attention of the Court an apparent conflict between the holding in the instant case and the holding in the case of Belle Mead Development Corporation v. Reed, 114 Fla. 300, 153 South. Rep. 834, and subsequent cases following the doctrine announced in that case; therefore, the point presented should be reconsidered.

WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.