HENDRY, Judge.
The appellants were the successful purchasers of real property at a foreclosure sale which was held pursuant to a final judgment of foreclosure entered by the trial court against the Swartswelters, appellees, and which judgment was in favor of the Hunters, two other appellees. The property in question was encumbered as follows: (a) first mortgage given by Swartswelters to the Hunters in the amount of $20,000; (b) second mortgage given by the Swarts-welters to J. H. Early, the remaining ap-pellee here, in the amount of $10,000.
As time progressed, the Swartswelters fell behind on their obligation under the first mortgage, and thereafter the first mortgagees, Hunters, foreclosed. Default judgment was entered against the Swarts-welters, and on March 11, 1968, the trial court entered final judgment against all the defendants in the Hunters’ foreclosure action, ordering the clerk of the court to offer the property for sale.
However, on April 5, 1968, the Swarts-welters filed their motion to set aside the order of sale, which the court heard and considered as objections to the sale. After a hearing was held on the above pleading, the court entered its order dated May 9, 1968, which rescinded the foreclosure sale, setting forth the court’s grounds for such rescission, infra. The appellants filed their petition for rehearing, which was denied by order of court. This appeal is from that order of the court which denied the motion for rehearing.
Although the appellant has addressed his notice of appeal to a nonap-pealable order which denied his petition for rehearing, he has properly identified the proceedings being appealed, i. e., the order rescinding the foreclosure sale. Moreover, no genuine prejudice has resulted to the appellee, and jurisdiction being discretion *373 ary with this court, we shall treat the appeal as one properly taken. State ex rel. Poe v. Allen, Fla.1967, 196 So.2d 745; Florida Appellate Rules, Rule 3.2, 32 F.S.A. We also note that a full appeal has been taken from post-decretal proceedings which are actually interlocutory in nature. This appeal, although final in form, will therefore be treated as a perfected interlocutory appeal on the authority of Helker v. Gouldy, Fla.App.1966, 181 So.2d 536, and Burton v. Sanders, Fla.App.1965, 170 So.2d 591. See also Florida Appellate Rules, Rule 4.2.
That order of the court which rescinded the foreclosure sale reads as follows:
“2. That subsequent to the service of process upon Defendants at the commencement of the proceedings, said Defendants retained an attorney to represent them in negotiations for settlement of the suit by reinstatement of the mortgage or otherwise and that Defendant’s attorney did have some contact with Plaintiffs and that Defendants believed that the foreclosure suit would not proceed to final judgment while negotiations were pending and that Default, Final Judgment, and Order of Sale were entered in this cause without the knowledge of Defendants;
“3. That Defendants have the means to refinance their property or to offer a higher bid at sale of the property than was obtained at the foreclosure sale;
“4. That the fair value of the property is somewhere between the $50,000.00 testified to by the purchaser’s appraiser and approximately $80,000.00 as testified to by Defendants and their appraiser;
“5. That said property went to foreclosure sale by reason of mistake and inadvertence of Defendants;
“6. That while the $36,000.00 sale price obtained at foreclosure sale would not ordinarily shock the conscience of the Court, the Court is of the opinion that said sale price is inadequate under the circumstances of this case and would amount to an inequitable forfeiture by Defendants; * *
However, our view of the record does not support the finding by the circuit judge that “said property went to foreclosure sale by reason of mistake and inadvertence of defendants.” Rather, the record clearly indicates that the acts which Mr. Swartswelter alleged werel a retainment of counsel by him, fell short of establishing an attorney-client relationship;[1] *374 that the communications from the attorney for the first mortgagee in regard to settlement and dismissal of the foreclosure suit were mailed directly to Mr. Swartswelter;[2] and finally, that the certificates of service, summonses, and pleadings established that *375 the Swartswelters were adequately and completely apprised of the foreclosure proceedings from date of commencement up to and including the foreclosure sale itself. We therefore, hold that it was error and an abuse of discretion for the circuit judge to have found mistake and inadvertence.
Appellants also seek reversal of the rescission order based on the general rule that a foreclosure sale may not be set aside unless there is a showing of fraud or mistake connected with the sale, or unless there is a showing that the price paid by the successful bidder was inadequate. As to that part of the general rule relating to fraud or mistake connected with the sale, see Watson v. Vafides, Fla.App.1968, 212 So.2d 358; 601 West 26 Corp. v. Equity Capitol Company, Fla.App.1965, 177 So.2d 739. Neither fraud nor mistake connected with the sale (such as improper description of the property, 601 West 26 Corp. v. Equity Capitol Company, supra) has been made to show here.
As to the second part of the general rule set forth above, i. e., that a foreclosure sale will be set aside when the price paid by successful bidders is inadequate, there is a general recognition in the common law that foreclosure purchases are rarely comparable to the fair market value of the property. This view was well stated in the case of McCann v. City of St. Petersburg, 145 Fla. 158, 199 So. 264, wherein the Supreme Court held a decree which confirmed a sale of real property for the city improvement liens not amenable to rescission when the record showed that reasonable cash value of property was $10,000, while the amount received at sale was $3,400. It was said by the court as follows:
“It is by no means a matter of discretion with the court to rescind a sale which it has once confirmed, nor is the sale to be rescinded for mere inadequacy of price, or for an increase of price alone, irregularity, and the like. Some special grounds must be laid such as fraud and collusion, accident, mutual mistake, breach or trust, or misconduct upon the part of the purchaser, or other party connected with the sale, which has worked injustice to the party complaining and and was unknown to him at the time % % %
See also Maule Industries, Inc. v. Seminole Rock and Sand Co., Fla.1957, 91 So.2d 307; Waybright v. Turner, 129 Fla. 310, 176 So. 424; Ruff v. Guarantee Title & Trust Company, 99 Fla. 197, 126 So. 383; O’Neal v. McElhiney, Fla.App.1965, 172 So.2d 492.
Confronting us here is the appellees’ contention that the property in question has a fair market value of $75,000. However, such allegation cannot override the fact that the price paid by the appellants was in full accordance with the law, and was in excess of final decree entered by the trial court. There are no allegations as to collusion, accident, mutual mistake, breach of trust, or any other form of fraud or misconduct upon the purchasers or other parties connected with this particlular foreclosure sale. Moreover, since the successful bidders and purchasers paid an amount which exceeded the judgment entered in the court’s final decree, there is no question involving a deficiency which would invoke further equities into the case.
The appellees also argue that the doctrine of acceptance of benefits applies, which would in effect prevent the appellants from prosecuting this appeal. The rationale underlying this theory is that, once the rescission order was entered by the court, the appellants received a refund of the $36,000 they had paid into the court’s registry at the foreclosure sale. Appellees contend that acceptance of the refund constitutes an acceptance of benefits according to the doctrine. See Capitol Finance Corp. v. Oliver, 116 Fla. 790, 156 So. 736; Sedgewick v. Shaw, Fla.App.1966, 188 So.2d 29. However, we do not feel that the facts in this case constitute a situation governed by the ..acceptance of benefits doctrine. Here, the appellants did not receive anything, when they were refunded the *376 money they paid at the foreclosure sale, by way of decree or judgment which they were not previously entitled to. The appellants merely received funds which they had deposited with the registry of the court pending the final .outcome of foreclosure sale. See Brown v. Epstein, Fla.App.1968, 208 So.2d 836.
For the reasons expressed herein, we hereby reverse the order being appealed.
Reversed.

. The following is an excerpt of the testimony given by the attorney with whom the Swartswelters alleged an attorney-client relationship had been established:
“Q Were you employed to represent the Swartswelters in a suit entitled George G. Hunter, et cetera, plaintiffs, versus E. E. Swartswelter and others, being Pile No. 68-331?
“I ask if you would look at the court file to familiarize yourself as to whether or not you were employed by them to represent them in this suit.
“A I was not employed. There are no pleadings in this file that reflect anything filed by me.
“Q Had you been paid any funds or anything to do any work for them?
“A No.
“Q Did you offer to do anything gratuitously for—
“A Yes.
“Q What did you do?
“A Mr. Swartswelter alone came to my office and indicated to me that he had enough monies to pay to a Mr. Boyd of Blackwell, Walker & Gray, but Mr. Boyd wanted an exorbitant fee.
“He asked me if I knew Mr. Boyd. I said, ‘No, but I know Jack Camp at Blackwell.’
“I called Mr. Camp, who referred me to Mr. Boyd.
“Mr. Boyd called me back, and I believe the best I can recollect is that he agreed to take a $450 fee at that time.
“I told Mr. Swartswelter merely to carry the money and attorneys' fees to Mr. Boyd and the case is over.
“Q At that time did you tell him the suit was not going to be prosecuted?
“A No. I never saw or spoke to him again.
*374 “Q Did you tell him at that time if he did not retain counsel a default would be—
“A No. I thought he was going down to Boyd’s office and pay out the back amount and attorneys’ fees.
“Q He did not offer you the monies to give them?
“A No.
“Q All you did was pick up the phone?
“A To see if I could negotiate a lesser fee.
“Q Did you advise Mr. Boyd or anyone in Blackwell’s office that you were of counsel?
“A No. I spoke only to Mr. Boyd and Jack Camp.
“Q The only thing you talked to him about was in regard to attorneys’ fees?
“A To the best of my recollection.
“Q There is testimony in the record that you advised these defendants, the Swartswelters, that the case was then suspended and would not go on to a final decree. Did you tell them that?
“A No. I told Ernie at that time that more than twenty days had elapsed since he was served with the paper.
“He brought the complaint in with him, and I told him, after I spoke to Jack, that Jack had not taken any default, so he was to get the monies right to him and avoid that default.
“Q You did tell him that?
“A Yes.
“Q Subsequent to the time that you are talking of, did you again talk to the Swartswelters or anything?
“A No.
“Q Did they ever contact you?
“A No.
“Q Were you available?
“A I was in my office every day.
“Q They say you were out of town. Would that be correct?
“A I was in the hospital from 17 November to 1 January in ’68. I don’t know how that fits in.
“Q To what date in 1968?
“A To January 1st of ’68.
“Q This suit here presumably was filed January 9, 1968.
“You were in your office then?
“A X was.
“Q Subsequent to the 9th you were in your office?
“A Yes.
“Q The motion for final judgment after default was filed on March 11, 1968 which is approximately two months later.
“You were available and in town?
“A Since January 1st I was in town.
“Q The order for final judgment is March 11, 1968 ordering that the property be sold on the 27th day of March, 1968.
“You were available then, too, were you not?
“A Yes. I had no knowledge. I thought it was all over in January. X had no knowledge.
“Q Subsequent to that time and up to the time of the 18th day of April, you were available?
“A Yes, sir.
“Q You did not receive any monies?
“A No, sir.
“Q And you did not offer your services gratuitously?
“A Except for that one purpose.
“Q Only the call as to attorneys’ fees?
“A Yes.
“Q And you advised the defendant at that time that if he did not pay it, there was nothing that you could do, the case was going on?
“A I thought he had the monies at that time.”
The record also shows that this attorney represented Mrs. Swartswelter in a divorce action at an earlier date.

. A letter from the Hunters’ attorneys addressed to Mr. Swartswelter, reads in pertinent part as follows:
“Dear Mr. Swartswelter:
“We have discussed this matter with Mr. Hunter and he has agreed to reinstate the mortgage and to dismiss the suit to foreclose, which has heretofore been filed, upon your paying the $500.00 interest payment which is now due and to pay a reasonable attorney’s fee and court costs which we have incurred to date.”
H* # * *
“ * * * Normally, we would charge 50% of this amount if the matter is settled. In the instant case, we are willing to make a concession due to your statement that you overlooked these payments and did not recall having received any notice from Mr. Hunter.
“Accordingly, we enclose a statement for services rendered in the sum of $450.00, plus court costs. Upon receipt of your check payable to Mr. and Mrs. Hunter in the sum of $500.00, and a check payable to Blackwell, Walker & Gray, in the sum of $483.50, we will proceed to dismiss the complaint and your mortgage will be reinstated.”