STONE, J.
JP Morgan challenges the trial court’s distribution of surplus proceeds in a foreclosure action and its failure to vacate or reconsider the distribution order.
We reverse, as the trial court should have vacated the order when it became aware of the unsatisfied second mortgage, the mortgagee’s lack of agreement with the disbursement, and the order’s adverse impact on the lienholder’s rights. Further, the trial court’s decision is not supported by the evidence.
Upon foreclosure of a first mortgage, the defendants included property owner Neera Persad; the initial second mortgagee, Aames Funding Corporation (Aames); and Royale Gardens Condominium (the condo). The complaint recognized that Aames “may claim some interest in the subject real property by virtue of that Mortgage recorded at Official Records Book 35988, Page 147 of the Public Records of Broward County, Florida, however, whatever interest asserted by virtue of said instrument is subordinate and inferior to the lien of the mortgage being foreclosed herein.”
Persad and the condo answered; Aames, the junior lienholder, defaulted. JP Morgan is a successor to Aames’ interest. JP Morgan’s standing is not at issue.
Following the summary judgment of foreclosure, the property was sold to a third party and funds in excess of U.S. Bank’s entitlement were filed with the *653 court registry. Home Equity Loss Prevention Corp. (HELP), a non-party to the action, then filed a motion for disbursement from court registry, attaching a partial assignment of Persad’s interest in the surplus funds. The motion states that HELP owns the equity of redemption and that one or more of the parties on the attached service list may claim a superior interest in the surplus but have not yet filed any paper seeking disbursement. Only the condo filed a motion to disburse.[1]
Attorneys for HELP and/or the condo then provided the trial court with an “agreed” order directing the clerk to disburse sums from the court registry. The only “hearing” held on this order was at motion calendar. The trial court entered the order which resulted in disbursement to the condo for unpaid fees and assessments and attorney’s fees associated with their collection, with Persad to receive 70% of the balance ($11,843.74), and the remaining 30% to go to HELP ($5,075.89). There is no mention in the “agreed” order of the Aames second mortgage that was acknowledged in the complaint, HELP’S motion, and the final judgment. The order was entered on December 22, 2004.
On January 18, 2005, JP Morgan, as Aames’ assignee, filed an emergency motion to vacate the agreed order and a motion to determine priority of liens.
JP Morgan submitted proof that it held the unsatisfied second mortgage. At the hearing on JP Morgan’s motions, the trial court recognized uncertainty in the law concerning the court’s obligation to seek out interest holders or parties who have defaulted. In this case, JP Morgan’s assignment from Aames had not yet been recorded, although the monthly payments had been paid by Persad to JP Morgan for some time.
The trial court decision denying relief to JP Morgan was based on its conclusion that Aames had been properly noticed pri- or to disbursement and that JP Morgan had failed to appear or even timely record its assignment, “that it sat on its rights.” In other words, the court determined priorities not based upon time of lien or proof of satisfaction, but on the fact of notice to JP Morgan’s assignor.
Without proof of satisfaction of the second mortgage, and even in the absence of an appearance, the funds should have been left in the court’s registry until the second mortgagee came forward to claim them or until proof of Appellees’ entitlement was presented to the court.
It is undisputed that Persad and HELP recognized that there was a junior lien-holder and that its second mortgage was not satisfied. Certainly, the foreclosure of the first did not extinguish the second; it merely transferred the lien from the property to the surplus funds that took its place. “After removal from the land, it [the lien] then attached to what had taken the place of the land in the eyes of the law, to wit, whatever remained as surplus after paying off the firát mortgage and costs.” Waybright v. Turner, 129 Fla. 310, 176 So. 424, 428 (1937). Whether the second was in Aames’ name or JP Morgan’s is of no consequence here. Rosen v. Dorn-Kothe, Inc., 126 Fla. 717, 171 So. 646, 648 (1936) (holding that surplus money arising from a sale of land under a decree of foreclosure stands in the place of the land itself in respect to liens thereon or vested rights therein); Meyer v. Bricklayers, Masons & Plasterers Union, 144 Fla. 401, 198 So. 78, 79 (1940) (affirming that the surplus funds stand in place of the land itself in respect to liens and/or vested rights therein).
*654 This principle has been recognized as outweighing the doctrine of laches. In United States of America v. Sneed, 620 So.2d 1093 (Fla. 1st DCA 1993), the First District reversed disbursement to a property owner in favor of the lienholder, despite the fact that the funds had languished in the court’s registry for nine years.
The fact that an inferior lienholder defaults to the foreclosure of a senior lien does not open a door for others to claim a surplus without an evidentiary hearing to determine priorities. See Schroth v. Cape Coral Bank, 377 So.2d 50 (Fla. 2d DCA 1979) (holding that the trial court should have determined the interests of the property owners and the other defendants in a foreclosure suit by an eviden-tiary hearing, irrespective of whether they filed responsive pleadings). Clearly, a surplus is payable to junior lienholders in accordance with their priority and “only after the liens have been satisfied may any surplus be disbursed to the owner of the equity of redemption.... ” General Bank, F.S.B. v. Westbrooke Pointe, Inc., 548 So.2d 736, 736 (Fla. 3d DCA 1989). In Citibank, FSB v. PNC Mortgage Corporation, 718 So.2d 300 (Fla. 2d DCA 1998), the Second District reversed an order disbursing surplus to inferior interests without first determining the priorities and the amounts due to remaining junior lienhold-ers, notwithstanding a lienholder’s unexcused failure to attend a disbursement hearing. The court said, “[i]nferior junior lienholders have no equitable claim to the surplus of proceeds until superior junior lienholders have had their claims satisfied.” Id. It is the obligation of the trial court, under such circumstances, to weigh and determine the competing claims by priority. In Golindano v. Wells Fargo Bank, 913 So.2d 614, 615 (Fla. 3d DCA 2005), the Third District recognized that before any foreclosure surplus funds can be disbursed, the trial court must first determine priorities of lienholders. A lien-holder does not waive any right to the surplus simply because it allowed a default to be entered against it. See also Garcia v. Stewart, 906 So.2d 1117 (Fla. 4th DCA 2005).
We note that the body of law requiring an evidentiary hearing to determine priorities is not inconsistent with the requirement in other instances that a plaintiff establish entitlement to property or damages by evidence, at least by affidavit and, in the event of any apparent dispute, by evidentiary hearing or trial.
We recognize that the better practice is for a junior lienor to appear and to file a cross-claim. Nevertheless, the issue is one of property rights. There is no authority for the proposition that the funds cannot stay in the court’s registry until the trial court determines that junior lienholders are satisfied prior to disbursement to a mortgagor or mortgagor’s assigns. Therefore, the order is reversed, and we remand for further proceedings.
FARMER and MAY, JJ., concur.

. The condo’s claim is not disputed, and they are not parties to this appeal.