# Supreme Court of Florida

————————

No. SC14-1265

————————

**LEWIS BROOKE BARTRAM,**
Petitioner,

vs.

**U.S. BANK NATIONAL ASSOCIATION, etc., et al.,**
Respondents.

————————

No. SC14-1266

————————

**THE PLANTATION AT PONTE VEDRA,**
Petitioner,

vs.

**U.S. BANK NATIONAL ASSOCIATION, etc., et al.,**
Respondents.

————————

No. SC14-1305

————————

**GIDEON M.G. GRATSIANI,**
Petitioner,

vs.

**U.S. BANK NATIONAL ASSOCIATION, etc., et al.,**
Respondents.

[November 3, 2016]

PARIENTE, J.

The issue before the Court involves the application of the five-year statute of limitations to "[a]n action to foreclose a mortgage" pursuant to section 95.11(2)(c), Florida Statutes (2012).[1]  The Fifth District Court of Appeal relied on this Court's reasoning in <u>Singleton v. Greymar Associates</u>, 882 So. 2d 1004 (Fla. 2004), rejecting that the statute of limitations had expired.  Because of the importance of this issue to both lenders and borrowers, the Fifth District certified to this Court a question of great public importance, which we have rephrased to acknowledge that the note in this case is a standard residential mortgage, which included a contractual right to reinstate:

> DOES ACCELERATION OF PAYMENTS DUE UNDER A RESIDENTIAL NOTE AND MORTGAGE WITH A REINSTATEMENT PROVISION IN A FORECLOSURE ACTION THAT WAS DISMISSED PURSUANT TO RULE 1.420(B), FLORIDA RULES OF CIVIL PROCEDURE, TRIGGER APPLICATION OF THE STATUTE OF LIMITATIONS TO PREVENT A SUBSEQUENT FORECLOSURE ACTION BY THE MORTGAGEE BASED ON PAYMENT DEFAULTS OCCURRING SUBSEQUENT TO DISMISSAL OF THE FIRST FORECLOSURE SUIT?

---

1. In addition to the briefs of the parties, we have also reviewed briefs submitted on behalf of the parties by the following amici curiae: the U.S. Financial Network, the Mortgage Bankers Association and the American Legal and Financial Network on behalf of Respondent and Bradford and Cheri Langworthy and the Titcktin Law Group, P.A., Baywinds Community Association, Upside Property Investment, LLC, the Florida Alliance for Consumer Protection, the Community Associations Institute, and the National Association of Consumer Advocates on behalf of Bartram.

We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.

In this case, it is uncontroverted that the borrower, Lewis Brooke Bartram, also referred to as the mortgagor, stopped making payments on his $650,000 mortgage and note, both before and after the foreclosure action was brought and subsequently dismissed.  For the reasons set forth in this opinion, we answer the rephrased certified question in the negative and hold, consistent with our reasoning in Singleton, that the mortgagee, also referred to as the lender, was not precluded by the statute of limitations from filing a subsequent foreclosure action based on payment defaults occurring subsequent to the dismissal of the first foreclosure action, as long as the alleged subsequent default occurred within five years of the subsequent foreclosure action.  When a mortgage foreclosure action is involuntarily dismissed pursuant to Rule 1.420(b), either with or without prejudice, the effect of the involuntary dismissal is revocation of the acceleration, which then reinstates the mortgagor's right to continue to make payments on the note and the right of the mortgagee, to seek acceleration and foreclosure based on the mortgagor's subsequent defaults.  Accordingly, the statute of limitations does not continue to run on the amount due under the note and mortgage.[2]

_____

2. Our holding is consistent with the views of the excellent amici briefs submitted by the Real Property Probate & Law Section of The Florida Bar, The Business Law Section of The Florida Bar, and the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation at the request of the Third District in Deutsche Bank Trust Co. Americas v. Beauvais, 188 So. 3d

Absent a contrary provision in the residential note and mortgage, dismissal of the foreclosure action against the mortgagor has the effect of returning the parties to their pre-foreclosure complaint status, where the mortgage remains an installment loan and the mortgagor has the right to continue to make installment payments without being obligated to pay the entire amount due under the note and mortgage. Accordingly, we approve the Fifth District's opinion in U.S. Bank National Association v. Bartram, 140 So. 3d 1007 (Fla. 5th DCA 2014), and answer the rephrased certified question in the negative.

**FACTS AND PROCEDURAL BACKGROUND**

On November 14, 2002, Petitioners Lewis Bartram ("Bartram") and his then-wife Patricia Bartram[3] ("Patricia"), purchased real property in St. Johns County, Florida (the "Property"). Less than a year later, Patricia filed for dissolution of the couple's marriage, which was officially dissolved on November 5, 2004. Pursuant to a prenuptial agreement the Bartrams had previously executed, the divorce court ordered Bartram to purchase Patricia's interest in the Property.

---

938 (Fla. 3d DCA 2016). These amici briefs addressed the same issue presented by the rephrased certified question and limited their discussion to the terms of the standard form mortgage that is the subject of this case.

3. Gideon Gratsiani was substituted as a party by order of this Court after Gratsiani purchased Patricia Bartram's mortgage.

In order to comply with the divorce court's order, on February 16, 2005, Bartram obtained a $650,000 loan through Finance America, LLC, secured by a mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc., in its capacity as nominee for Finance America (the "Mortgage"). Finance America subsequently assigned the Mortgage to Respondent, U.S. Bank National Association (the "Bank"), as trustee and assignee. A day later, on February 17, 2005, Bartram executed a second mortgage (the "Second Mortgage") to Patricia as security for a second mortgage note of $120,000.

The Mortgage was a standard residential form mortgage and required the lender to give the borrower notice of any default and an opportunity to cure before the mortgagee could proceed against the secured property in a judicial foreclosure action. Specifically, paragraph 22 of the Mortgage was an optional acceleration clause and provided that the lender was required to give the borrower notice that failure to cure the default "may result in acceleration of the sums secured" by the mortgagee and foreclosure of the property:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to

reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

(Emphasis added).

In addition to providing optional acceleration and foreclosure as a remedy for default, paragraph 19 of the Mortgage also granted the borrower a right to reinstate the note and Mortgage after acceleration if certain conditions were met, including paying the mortgagee all past defaults and other related expenses that would be due "as if no acceleration had occurred":

Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the

- 6 -

sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. <u>Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.</u> However, this right to reinstate shall not apply in the case of acceleration under Section 18.[4]

(Emphasis added). The designated maturity date of the note was March 1, 2035.

On January 1, 2006, Bartram stopped making payments on the Mortgage, and never made payments on the Second Mortgage. Around the same time, Bartram also stopped paying homeowners' association assessments to the Plantation at Ponte Vedra, Inc. (the "HOA"), the homeowners' association of the development where the Property was located. The HOA subsequently placed a lien on the Property for nonpayment of the HOA assessments.

On May 16, 2006, the Bank filed a complaint to foreclose the Mortgage based on Bartram's failure to make payments due from January of that year to the date of the complaint. The foreclosure complaint stated that all conditions precedent to the acceleration of the Mortgage and to the foreclosure of the Mortgage had been fulfilled or had occurred, and declared the full amount payable

---

4. Paragraph 18 concerned the transfer of the mortgaged property in a real estate sale without the Lender's "prior written consent," and required "immediate payment in full of of all sums secured by this Security Instrument" if breached.

- 7 -

under the note and Mortgage to be due.  Nearly five years later, on May 5, 2011, the foreclosure action was involuntarily dismissed after the Bank failed to appear at a case management conference.[5]  The Bank did not appeal the dismissal.

Following the dismissal of the foreclosure action, Bartram filed a motion to cancel the promissory note and release the lien on the mortgage.  The trial court denied the motion in an order dated August 29, 2011, citing to its lack of jurisdiction in the matter since the May 5, 2011, involuntary dismissal under Rule 1.420(b) "was an adjudication on the merits and the case has been closed."

Approximately a year later, after the dismissal of the foreclosure action and almost six years after the Bank filed its foreclosure complaint, Bartram filed a crossclaim against the Bank in a separate foreclosure action Patricia had brought against Bartram, the Bank, and the HOA.  Bartram's crossclaim sought a declaratory judgment to cancel the Mortgage and to quiet title to the Property, asserting that the statute of limitations barred the Bank from bringing another foreclosure action.[6]

---

5. The Record does not indicate what action occurred, if any, in the first foreclosure action from the date the complaint was filed in 2006 until it was dismissed in 2011.

6. On May 24, 2012, Bartram filed a motion for default against the Bank for failure to respond to his crossclaim, but the trial court never ruled on this motion.

Bartram then moved for summary judgment on his crossclaim. The trial court found no genuine issue as to any material fact, granted summary judgment, quieted title in Bartram, found the Bank had no further ability to enforce its rights under the note and Mortgage that were the subject matter of the Bank's dismissed foreclosure action, and cancelled the note and Mortgage. In doing so, the trial court released the Bank's lien on the Property. The Bank subsequently filed a motion for rehearing, and after the trial court denied the Bank's motion, appealed to the Fifth District.

Before the Fifth District, the Bank relied on this Court's decision in Singleton for its position that the trial court's dismissal "nullified [the Bank's] acceleration of future payments; accordingly, the cause of action on the accelerated payments did not accrue and the statute of limitations did not begin to run on those payments, at least until default occurred on each installment." Bartram, 140 So. 3d at 1009-10. The Bank acknowledged, however, that it could not seek to foreclose the Mortgage based on Bartram's defaults prior to the first foreclosure action, but could seek foreclosure based on defaults occurring subsequent to the dismissal of the first foreclosure action. Id. at 1009. Bartram contended on appeal, joined by Patricia and the HOA, "that the cause of action for default of future installment payments accrued upon acceleration, thus triggering the statute of limitations clock to run, and because the Bank did not revoke its acceleration at any time after the dismissal, the five-year statute of limitations period eventually expired, barring the

- 9 -

Bank from bringing another suit [to foreclose the Mortgage]." Id. at 1010 (citations omitted).

The Fifth District agreed with the Bank and held that if a "new and independent right to accelerate" exists in a res judicata analysis under Singleton, 882 So. 2d at 1008, then "there is no reason it would not also exist vis-à-vis a statute of limitations issue." Id. at 1013. The Fifth District reasoned that a "new and independent right to accelerate" would mean that each new default would present new causes of action, regardless of whether the payment due dates had been accelerated in the first foreclosure action. Id. at 1013-14. Based on Singleton, the Fifth District explained, "a default occurring after a failed foreclosure attempt creates a new cause of action for statute of limitations purposes, even where acceleration had been triggered and the first case was dismissed on its merits." Id. at 1014. The Fifth District accordingly reversed the trial court's judgment, remanded the case to the trial court, and certified the question of great public importance we now address.

## ANALYSIS

The rephrased certified question involves a pure question of law. Therefore, the standard of review is de novo. See Christensen v. Bowen, 140 So. 3d 498, 501 (Fla. 2014). In answering the rephrased certified question, we begin by reviewing this Court's decision in Singleton, which the Fifth District and most courts throughout the state have held to be determinative of the rephrased certified

question.  We then discuss the cases, both state and federal, that concern

successive mortgage foreclosure actions in a statute of limitations context decided

after Singleton.  In doing so, we examine whether our analysis in Singleton, which

was decided on res judicata grounds, extends to the statute of limitations context

present in this case.  We then discuss the significance to our analysis, if any, of the

involuntary dismissal of the foreclosure action pursuant to Rule 1.420(b) and the

effect of the Mortgage's reinstatement provision.  Based on this analysis, we

conclude by answering the rephrased certified question in the negative and

approving the Fifth District's decision in Bartram.

## I.  Singleton v. Greymar Associates

In Singleton, a mortgagee brought two consecutive foreclosure actions

against a mortgagor.  882 So. 2d at 1005.  The first foreclosure action was based on

the mortgagor's failure to make mortgage payments from September 1999 to

February 2000 and "sought to accelerate the entire indebtedness against" the

mortgagor.  Id. & n.1.  The first foreclosure action was dismissed with prejudice by

the trial court after the mortgagee failed to appear at a case management

conference.  Id.  After this involuntary dismissal, the mortgagee filed a second

foreclosure action based on a separate default that occurred when the mortgagor

failed to make mortgage payments starting in April 2000.  Id. at 1005.  The

mortgagor contended that the dismissal of the first foreclosure action barred relief

- 11 -

in the second foreclosure action, but the trial court rejected this argument and entered a summary final judgment of foreclosure for the mortgagee.  Id.

The mortgagor appealed, and "the Fourth District affirmed the circuit court's decision, finding that '[e]ven though an earlier foreclosure action filed by appellee was dismissed with prejudice, the application of res judicata does not bar this lawsuit.  The second action involved a new and different breach.' " Id. (citing Singleton v. Greymar Assocs., 840 So. 2d 356, 356 (Fla. 4th DCA 2003)).  Singleton petitioned this Court for jurisdiction, citing an express and direct conflict with Stadler v. Cherry Hill Developers, Inc., 150 So. 2d 468 (Fla. 2d DCA 1963).  Id.

Stadler also involved two successive foreclosure actions where the first foreclosure action had been dismissed with prejudice.  150 So. 2d at 469.  The mortgagee brought a second foreclosure action that was identical except for alleging a different period of default.  That action was successful, and the mortgagor appealed.  The Second District reversed the judgment of foreclosure entered on the basis of res judicata and concluded that the "election to accelerate put the entire balance, including future installments at issue."  Id. at 472.  Therefore, even though different periods of default were asserted, the "entire amount due" was the same and thus the "actions are identical."  Id.  Accordingly, the Second District concluded that res judicata barred the second foreclosure action.  Id. at 473.

- 12 -

After analyzing the position of the two appellate courts, this Court agreed with the Fourth District that "when a second and separate action for foreclosure is sought for a default that involves a separate period of default from the one alleged in the first action, the case is not necessarily barred by res judicata." Singleton, 882 So. 2d at 1006-07. In support, we cited with approval the Fourth District's reasoning in Capital Bank v. Needle, 596 So. 2d 1134 (Fla. 4th DCA 1992):

> Our reading of the case law set out above leads us to conclude that a final adjudication in a foreclosure action that also prays for a deficiency judgment on the underlying debt may, but does not necessarily, bar a subsequent action on the debt. For instance, if the plaintiff in a foreclosure action goes to trial and loses on the merits, we do not believe such plaintiff would be barred from filing a subsequent foreclosure action based upon a subsequent default. The adjudication merely bars a second action relitigating the same alleged default. A dismissal with prejudice of the foreclosure action is tantamount to a judgment against the mortgagee. That judgment means that the mortgagee is not entitled to foreclose the mortgage. Such a ruling moots any prayer for a deficiency, since a necessary predicate for a deficiency is an adjudication of foreclosure. There was no separate count in the Capital Bank complaint seeking a separate recovery on the promissory note alone.
>
> Accordingly, we do not believe the dismissal of the foreclosure action in this case barred the subsequent action on the balance due on the note.

Singleton, 882 So. 2d at 1007 (quoting Capital Bank, 596 So. 2d at 1138) (emphasis added).

Our holding in Singleton was based on the conclusion that an "acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue" than a foreclosure action and acceleration based on the

same default at issue in the first foreclosure action. Id. Indeed, we cited with approval another decision of the Fourth District, Olympia Mortgage Corp. v. Pugh, 774 So. 2d 863, 866 (Fla. 4th DCA 2000), which held—contrary to the Second District's conclusion in Stadler—that an acceleration of debt in a mortgage foreclosure action did not place future installments at issue. As we explained, the unique nature of a mortgage compelled this result:

> This seeming variance from the traditional law of res judicata rests upon a recognition of the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship. For example, we can envision many instances in which the application of the Stadler decision would result in unjust enrichment or other inequitable results. If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note—merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.

Singleton, 882 So. 2d at 1007-08 (emphasis added).

Our recognition in Singleton that each new default presented a separate cause of action was based upon the acknowledgement that because foreclosure is an equitable remedy, "[t]he ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage." Id. at 1008. Thus, the failure of a mortgagee to foreclose the mortgage based on an alleged default did not mean the mortgagor had

- 14 -

automatically and successfully defeated his or her obligation to make continuing payments on the note.

## II. Mortgage Foreclosure Cases Post-<u>Singleton</u>: Application to Statute of Limitations Context

In cases concerning mortgage foreclosure actions, since our decision in <u>Singleton</u>, both federal and state courts have applied our reasoning in <u>Singleton</u> in the statute of limitations context and have concluded that because of "the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship," an "adjudication denying acceleration and foreclosure" does not bar subsequent foreclosure actions based on separate and distinct defaults. <u>See</u> <u>id.</u> at 1007. As the Fourth District explained, under <u>Singleton</u>, a "new default, based on a different act or date of default not alleged in the dismissed action, creates a new cause of action." <u>Star Funding Sols., LLC v. Krondes</u>, 101 So. 3d 403 (Fla. 4th DCA 2012). That is because, as the First District has also explained, this Court's "analysis in <u>Singleton</u> recognizes that a note securing a mortgage creates liability for a total amount of principal and interest, and that the lender's acceptance of payments in installments does not eliminate the borrower's ongoing liability for the entire amount of the indebtedness." <u>Nationstar Mortg., LLC v. Brown</u>, 175 So. 3d 833, 834 (Fla. 1st DCA 2015).

Other district courts of appeal have similarly applied our reasoning in <u>Singleton</u> to determine that the five-year statute of limitations did not bar a

- 15 -

subsequent foreclosure action when the mortgagee had brought an initial foreclosure action that accelerated all sums due under the mortgage and note, on that same mortgage outside the statute of limitations window.  For instance, in Deutsche Bank Trust Co. Americas v. Beauvais, 188 So. 3d 938, 947 (Fla. 3d DCA 2016), the Third District concluded that because the subject mortgage's reinstatement provision granted the mortgagor the right to avoid foreclosure by paying only the past due defaults, that "despite acceleration of the balance due and the filing of an action to foreclose, the installment nature of a loan secured by such a mortgage continue[d] until a final judgment of foreclosure [was] entered and no action [was] necessary to reinstate it via a notice of 'deceleration' or otherwise."

With reasoning similar to Beauvais, in Evergrene Partners, Inc. v. Citibank, N.A., 143 So. 3d 954, 955 (Fla. 4th DCA 2014), a mortgagor challenged, on statute of limitations grounds, a second foreclosure action brought by the mortgagee when the mortgagee had voluntarily dismissed a prior foreclosure action based on a separate default.  The Fourth District held that the mortgage was still enforceable because "the statute of limitations ha[d] not run on all of the payments due pursuant to the note," specifically those payments missed after the initial alleged default.  Id.  In reaching this conclusion, the Fourth District relied on Singleton, and emphasized that "[w]hile a foreclosure action with an acceleration of the debt may bar a subsequent foreclosure action based on the same event of default, it does not bar subsequent actions and acceleration based upon different events of

default." Id.  Similarly, in <u>PNC Bank, N.A. v. Neal</u>, 147 So. 3d 32, 32 (Fla. 1st DCA 2013), the First District held that an initial foreclosure action that sought acceleration and was dismissed with prejudice did not bar the mortgagee from "instituting a new foreclosure action based on a different act or a new date of default not alleged in the dismissed action."

Federal district courts in the state have also applied <u>Singleton</u> to dismiss claims seeking cancellation of a mortgage and note that are premised on the expiration of the statute of limitations after an initial foreclosure action that sought acceleration was dismissed.  In <u>Dorta v. Wilmington Trust National Ass'n</u>, No. 5:13-cv-185-Oc-10PRL, 2014 WL 1152917 (M.D. Fla. Mar. 24, 2014), the mortgagor brought an action seeking cancellation of the mortgage based on the expiration of the statute of limitations where the mortgagee previously accelerated payments and brought a foreclosure action that was ultimately dismissed without prejudice more than five years prior.  Id. at *1-2.  In dismissing the mortgagor's complaint, the federal district court held that even when the initial foreclosure action is dismissed without prejudice, "where a mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee's foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure actions . . . so long as they are based on separate defaults."  Id. at *6.

Similarly, in <u>Torres v. Countrywide Home Loans, Inc.</u>, No. 14-20759-CIV, 2014 WL 3742141, at *1 (S.D. Fla. July 29, 2014), the federal district court

- 17 -

dismissed a complaint that sought a declaration that the statute of limitations barred foreclosing on a mortgage after a prior foreclosure action where the mortgagee had sought acceleration of the note that had been dismissed. Relying on Singleton, the court noted that "each payment default that is less than five years old creates a basis for a subsequent foreclosure or acceleration action." Id. at *4; see also Romero v. SunTrust Mortg., Inc., 15 F. Supp. 3d 1279 (S.D. Fla. 2014) (holding that the installment nature of the note remained in effect after dismissal of a foreclosure action where the mortgagee had sought acceleration); Kaan v. Wells Fargo Bank, N.A., 981 F. Supp. 2d 1271 (S.D. Fla. 2013) (same).

We agree with the reasoning of both our appellate courts and the federal district courts that our analysis in Singleton equally applies to the statute of limitations context present in this case. As the Fifth District concluded, "[i]f a 'new and independent right to accelerate' exists in a res judicata analysis, there is no reason it would not also exist vis-à-vis a statute of limitations issue." Bartram, 140 So. 3d at 1013. This conclusion follows from our prior reasoning that a "subsequent and separate alleged default created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action." Singleton, 882 So. 2d at 1008. Therefore, with each subsequent default, the statute of limitations runs from the date of each new default providing the mortgagee the right, but not the obligation, to accelerate all sums then due under the note and mortgage.

- 18 -

Consistent with the reasoning of <u>Singleton</u>, the statute of limitations on the balance under the note and mortgage would not continue to run after an involuntary dismissal, and thus the mortgagee would not be barred by the statute of limitations from filing a successive foreclosure action premised on a "separate and distinct" default. Rather, after the dismissal, the parties are simply placed back in the same contractual relationship as before, where the residential mortgage remained an installment loan, and the acceleration of the residential mortgage declared in the unsuccessful foreclosure action is revoked.

### III. Significance of an Involuntary Dismissal and Reinstatement Provision

Having reaffirmed our prior holding in <u>Singleton</u> and the application of its reasoning to a statute of limitations context, we finally consider whether the type of dismissal of a foreclosure action has any bearing on our analysis and the effect of the Mortgage's reinstatement provision. In this case, the first foreclosure action was dismissed pursuant to Florida Rule of Civil Procedure 1.420, which provides for involuntary dismissals, and is the rule upon which the rephrased certified question is premised. Involuntary dismissal of a legal action by a court under Rule 1.420(b) terminates a court's jurisdiction over that action and may be with or without prejudice. A dismissal under Rule 1.420(b) operates as an adjudication on the merits as long as the dismissal was not for "lack of jurisdiction or for improper venue or for lack of an indispensable party," neither of which were a basis for the trial court's dismissal of the Bank's foreclosure action in this case.

The Fifth District determined that the involuntary dismissal was with prejudice but concluded that "the distinction is not material for purposes" of the statute of limitations analysis. See Bartram, 140 So. 3d at 1013 n.1. We agree. While a dismissal without prejudice would allow a mortgagee to bring another foreclosure action premised on the same default as long as the action was brought within five years of the default per section 95.11(2)(c), critical to our analysis is whether the foreclosure action was premised on a default occurring subsequent to the dismissal of the first foreclosure action. As the federal district court in Dorta reasoned, "if the mortgagee's foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file subsequent foreclosure actions—and to seek acceleration of the entire debt—so long as they are based on separate defaults." 2014 WL 1152917 at *6 (emphasis added). Accord Espinoza v. Countrywide Home Loans Servicing, L.P., No. 14-20756-CIV, 2014 WL 3845795, at *4 (S.D. Fla. Aug. 5, 2014) (finding the issue of whether the initial foreclosure action was dismissed with or without prejudice a distinction that was "irrelevant" to its analysis of whether acceleration of a mortgage note barred a subsequent foreclosure action brought outside the statute of limitations period).

Whether the dismissal of the initial foreclosure action by the court was with or without prejudice may be relevant to the mortgagee's ability to collect on past defaults. However, it is entirely consistent with, and follows from, our reasoning in Singleton that each subsequent default accruing after the dismissal of an earlier

foreclosure action creates a new cause of action, regardless of whether that dismissal was entered with or without prejudice.

Our conclusion is buttressed by the reinstatement provision of the Residential Mortgage that by its express terms granted the mortgagor, even after acceleration, the continuing right to reinstate the Mortgage and note by paying only the amounts past due as if no acceleration had occurred. Specifically, the reinstatement provision in paragraph 19 of Bartram's form residential mortgage gave Bartram "the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of . . . (c) entry of a judgment enforcing this Security Instrument," as long as Bartram "(a) pa[id] the Lender all sums which then would be due under this Security Instrument and Note as if no acceleration had occurred."

Under the reinstatement provision of paragraph 19, then, even after the optional acceleration provision was exercised through the filing of a foreclosure action—as it was in this case—the mortgagor was not obligated to pay the accelerated sums due under the note until final judgment was entered and needed only to bring the loan current and meet other conditions—such as paying expenses related to the enforcement of the security interest and meeting other requirements established by the mortgagee-lender to ensure the mortgagee-lender's interest in the property would remain unchanged—to avoid foreclosure. "Stated another way, despite acceleration of the balance due and the filing of an action to foreclosure,

- 21 -

the installment nature of a loan secured by such a mortgage continues until a final judgment of foreclosure is entered and no action is necessary to reinstate it via a notice of 'deceleration' or otherwise." Beauvais, 188 So. 3d at 947. Or, as the Real Property Law Section of the Florida Bar has explained, "[t]he lender's right to accelerate is subject to the borrower's continuing right to cure." Brief for The Real Property Probate & Trust Law Section of the Florida Bar at 8, Beauvais, 188 So. 3d 938 (Fla. 3d DCA 2016), 2015 WL 6406768, at *8. In the absence of a final judgment in favor of the mortgagee, the mortgagor still had the right under paragraph 19 of the Mortgage, the reinstatement provision, to cure the default and to continue making monthly installment payments.

Accepting Bartram's argument that the installment nature of his contract terminated once the mortgagee attempted to exercise the mortgage contract's optional acceleration clause—ignoring the existence of the mortgage's reinstatement provision—would permit the mortgagee only one opportunity to enforce the mortgage despite the occurrence of any future defaults. As we cautioned in Singleton, "justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default." 882 So. 2d at 1008. Following to its logical conclusion Bartram's argument that acceleration of the loan was effective before final judgment in favor of the mortgagee-lender in a foreclosure action would mean that the mortgagor-borrower would owe the accelerated amount after the

dismissal, effectively rendering the reinstatement provision a nullity, and—in most cases—leading to an unavoidable default.

## IV.  This Case

Here, the Bank's first foreclosure action was involuntarily dismissed, and therefore there was no judicial determination that a default actually occurred. Thus, even if the note had been accelerated through the Bank's foreclosure complaint, the dismissal of the foreclosure action had the effect of revoking the acceleration.  By the express terms of the reinstatement provision, if, in the month after the dismissal of the foreclosure action, Bartram began to make monthly payments on the note, the Bank could not have subsequently accelerated the entire note until there were future defaults.  Once there were future defaults, however, the Bank had the right to file a subsequent foreclosure action—and to seek acceleration of all sums due under the note—so long as the foreclosure action was based on a subsequent default, and the statute of limitations had not run on that particular default.

There have been many claims of unfair and predatory practices by banks and mortgage holders in the aftermath of the financial crisis that shook the country, and in particular, Florida.  See, e.g., Pino v. Bank of N.Y., 121 So. 3d 23, 27 (Fla. 2013) (discussing allegations of fraudulent backdating of mortgage assignments); see also In re Amends. to Fla. Rules of Civ. Pro.—Form 1.996, 51 So. 3d 1140 (Fla. 2010) (noting the necessity for verification of ownership of the note or right

- 23 -

to enforce the note in a foreclosure action because of "recent reports of alleged document fraud and forgery in mortgage foreclosure cases"). Some of these claims have included allegations that mortgage holders have precipitously sought foreclosure even though the mortgagor missed only one or two payments and attempted to cure their defaults. In this case, quite the opposite is true. Bartram raised no defense as to the terms of the Mortgage and note itself. His sole claim is that the Bank lost the right to seek foreclosure of the Mortgage based on distinct defaults that occurred subsequent to the dismissal of the initial foreclosure complaint.

After Bartram defaulted on the Mortgage, the Bank, in accordance with the terms of the mortgage contract, notified Bartram that failure to cure his past defaults would result in acceleration of the sums due under the mortgage and judicial foreclosure. When Bartram failed to cure the past defaults, the Bank filed its foreclosure complaint and exercised the optional acceleration clause. Yet, the reinstatement provision of the Mortgage afforded Bartram the opportunity to continue the installment nature of the loan by curing the past defaults. Until final judgment was entered in favor of the Bank, Bartram was not obligated to pay the accelerated loan amount. Dismissal of the foreclosure action therefore returned the parties to their pre-foreclosure complaint status. In considering the law, the facts, and equity, Bartram's position simply has no validity.

## CONCLUSION

The Fifth District properly extended our reasoning in <u>Singleton</u> to the statute of limitations context in a mortgage foreclosure action. Here, the Bank's initial foreclosure action was involuntarily dismissed. Therefore, as we previously explained in <u>Singleton</u>, the dismissal returned the parties back to "the same contractual relationship with the same continuing obligations." 882 So. 2d at 1007. Bartram and the Bank's prior contractual relationship gave Bartram the opportunity to continue making his mortgage payments, and gave the Bank the right to exercise its remedy of acceleration through a foreclosure action if Bartram subsequently defaulted on a payment separate from the default upon which the Bank predicated its first foreclosure action. Therefore, the Bank's attempted prior acceleration in a foreclosure action that was involuntarily dismissed did not trigger the statute of limitations to bar future foreclosure actions based on separate defaults.

Accordingly, we approve the Fifth District's decision in <u>Bartram</u> and answer the rephrased certified question in the negative.

It is so ordered.

LABARGA, C.J., and QUINCE, CANADY, and PERRY, JJ., concur.
POLSTON, J., concurs in result.
LEWIS, J., concurs in result only with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LEWIS, J., concurring in result only.

I am troubled by the expansion of <u>Singleton v. Greymar Associates</u>, 882 So. 2d 1004 (Fla. 2004), to potentially any case involving successive foreclosure actions. Other courts in this State have already broadly applied <u>Singleton</u>—a decision involving res judicata and dismissal with prejudice—to cases that were either dismissed for lack of prosecution or voluntarily dismissed by the note-holder, as well as to cases that concern the statute of limitations, without careful consideration of the procedural distinctions of each case. <u>E.g.</u>, <u>In re Anthony</u>, 550 B.R. 577 (M.D. Fla. 2016); <u>Dorta v. Wilmington Tr. Nat'l Ass'n</u>, 2014 WL 1152917 (M.D. Fla. 2014); <u>Romero v. Suntrust Mortg., Inc.</u>, 15 F. Supp. 3d 1279 (S.D. Fla. 2014); <u>Kaan v. Wells Fargo Bank, N.A.</u>, 981 F. Supp. 2d 1271 (S.D. Fla. 2013); <u>Evergrene Partners, Inc. v. Citibank, N.A.</u>, 143 So. 3d 954 (Fla. 4th DCA 2014); <u>see also</u> <u>In re Rogers Townsend & Thomas, PC</u>, 773 S.E.2d 101, 105-06 (N.C. Ct. App. 2015) (relying on <u>Singleton</u> in a case involving previous voluntary dismissals and the statute of limitations). Today's decision will only continue that expansion, which I fear will come at the cost of established Florida law and Floridians who may struggle with both the costs of owning a home and uncertain behavior by lenders. I therefore respectfully concur in result only.

At its narrowest, <u>Singleton</u> simply held that "when a second and separate action for foreclosure is sought for a default that involves a separate period of default from the one alleged in the first action, the case is <u>not necessarily</u> barred by

- 26 -

res judicata." 882 So. 2d at 1006-07 (emphasis supplied). However, as has been noted elsewhere, Singleton left several matters unanswered:

> [T]he Supreme Court omitted explanation of 1) what constitutes a valid new default after the initial round of default, acceleration, foreclosure filing, and dismissal; 2) how the fact-finder below determines that a valid new default has occurred; and 3) what conditions constitute valid new default, including whether the lender must reinstate the original note and mortgage terms in the interim or serve a second notice of intent to accelerate. Moreover, the court in no way addressed the effect of the involuntary dismissal on the statute of limitations.

Andrew J. Bernhard, Deceleration: Restarting the Expired Statute of Limitations in Mortgage Foreclosures, Fla. B.J., Sept.-Oct. 2014, at 30, 32. Given the procedural posture of this matter and the relatively sparse record before this Court, the decision today fails to address evidentiary concerns regarding how to determine the manner in which a mortgage may be reinstated following the dismissal of a foreclosure action, as well as whether a valid "subsequent and separate" default occurred to give rise to a new cause of action. See Singleton, 882 So. 2d at 1008. Instead of addressing these concerns, the Court flatly holds that the dismissal itself—for any reason—"decelerates" the mortgage and restores the parties to their positions prior to the acceleration without authority for support. Majority op. at 3.

In this case, there is no evidence contained in the record before this Court to show whether the parties tacitly agreed to a "de facto reinstatement" following the

dismissal of the previous foreclosure action.[7]  Further, despite the assumption of the majority of the Court to the contrary, the mortgage itself did not create a right to reinstatement following acceleration <u>and</u> the dismissal of a foreclosure action. The contractual right to reinstatement under the terms of this mortgage existed <u>only</u> under specific conditions,[8] which do not appear to have been satisfied in the

---

7.  Moreover, the precise nature of the dismissal in this case is even more uncertain than the mortgage in <u>Beauvais</u>, which was dismissed without prejudice. <u>See</u> <u>Deutsche Bank Tr. Co. Americas v. Beauvais</u>, 188 So. 3d 938, 964 (Fla. 3d DCA 2016) (Scales, J., dissenting).  The trial court below dismissed the first foreclosure action after indicating that it had informed the parties that "[f]ailure of the parties . . . to appear in person [at the case management conference] may result in the case being dismissed <u>without prejudice</u>."  Order of Dismissal, <u>U.S. Bank Nat'l Ass'n v. Bartram</u>, No. CA06-428 (Fla. 7th Cir. Ct. May 5, 2011) (emphasis added).  However, the trial court's order did not explicitly state whether this dismissal was with or without prejudice.  <u>Id.</u> ("The Complaint to Foreclose Mortgage . . . is hereby dismissed.").  Further complicating the matter, the Fifth District below stated that this dismissal was <u>with</u> prejudice, but summarily determined "that the distinction is not material for purposes of the issue at hand." <u>U.S. Bank Nat'l Ass'n v. Bartram</u>, 140 So. 3d 1007, 1013 n.1 (Fla. 5th DCA 2014).

8.  The mortgage note provides the following right to reinstatement:

Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but

- 28 -

record before this Court. Parties, particularly those as sophisticated as the banks and other lenders that routinely engage in such litigation, should be required to present evidence that the mortgage was actually decelerated and reinstated, rather than require our courts to fill in the blank and assume that deceleration automatically occurred upon dismissal of a previous foreclosure action.

Instead, I find myself more closely aligned with the dissenting opinion of Judge Scales in Beauvais, 188 So. 3d at 954 (Scales, J., dissenting). A majority of the en banc Third District Court of Appeal reached the same conclusion as the majority of this Court does today regarding very similar facts. By contrast, Judge Scales, joined by three of his colleagues, raised several concerns that arise from the

---

not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

See majority op. at 6-7.

- 29 -

conclusion that a mortgage is automatically decelerated and reinstated following the dismissal of a foreclosure action for any reason.

First, Judge Scales pointed out that the mortgage in Beauvais, like the mortgage in this case, created the borrower's right to reinstatement only under specific conditions, which did not include dismissal of a prior foreclosure action. Id. at 956-57 ("Neither the note nor the mortgage contain any provision reinstating the installment nature of the note if, after acceleration, a lender foreclosure action is dismissed."). Further reviewing the clear terms of the mortgage, Judge Scales explained that the mortgage ceased to be an installment contract upon the exercise of the lender's right to acceleration. Id. at 961-62. Thus, the conclusion that a court's dismissal of a foreclosure action itself can end acceleration and reinstate the mortgage ignores basic principles of Florida contract law:

> The majority opinion rewrites the parties' note and mortgage to create a reinstatement provision—i.e., reinstating the installment nature of the note, as if acceleration never occurred, upon any dismissal of any lawsuit—that the parties did not include when drafting their documents. Singleton does not say this; the parties' contract documents certainly do not say this; and Florida law is repugnant to the majority's insertion of a provision into the parties' private contract that the parties themselves most assuredly omitted. [FN. 23]

>> [FN. 23]: Brooks v. Green, 993 So. 2d 58, 61 (Fla. 1st DCA 2008) (holding that a court is without authority to rewrite a clear and unambiguous contract between parties).

Id. at 963.

Moreover, Judge Scales cogently explained that the overbroad construction of Singleton will undermine its limited holding. Singleton indicated that "an adjudication denying acceleration and foreclosure" should not bar a successive foreclosure predicated upon a "subsequent and separate alleged default." 882 So. 2d at 1007, 1008. Yet, under the majority decisions of the Third District and this Court, any dismissal of a foreclosure action can support a successive foreclosure action. See Beauvais, 188 So. 3d at 963-64 (Scales, J., dissenting). The form dismissal in Beauvais should not constitute an "adjudication denying acceleration and foreclosure," which could, at least according to Singleton, restore the parties to their respective pre-acceleration positions. Id. at 964 (quoting Singleton, 882 So. 2d at 1007). In light of the even more vague dismissal at issue in this case, I agree with Judge Scales' warning that "[w]e should be reluctant to hold that a trial court's form dismissal order visits upon the borrower and lender a host of critical, yet unarticulated, adjudications that fundamentally change the parties' contractual relationship and are entirely unsupported by the existing law or by the record below." Id. at 965.

Finally, the expansion of Singleton's holding that res judicata "does not necessarily" bar the filing of successive foreclosure actions to the statute of limitations ignores critical distinctions between these two doctrines, at a serious cost to the statute of limitations and the separation of powers. As long recognized in this State, res judicata is a doctrine of equity not to "be invoked where it would

- 31 -

defeat the ends of justice." Id. at 967 n.31 (citing State v. McBride, 848 So. 2d 287, 291 (Fla. 2003); Aeacus Real Estate Ltd. P'ship. v. 5th Ave. Real Estate Dev., Inc., 948 So. 2d 834 (Fla. 4th DCA 2007)); see also Singleton, 882 So. 2d at 1008 (citing deCancino v. E. Airlines, Inc., 283 So. 2d 97, 98 (Fla. 1973)).  However, "equity follows the law"; therefore, equitable principles are subordinate to statutes enacted by the Legislature, including the statute of limitations.  May v. Holley, 59 So. 2d 636 (Fla. 1952); Beauvais, 188 So. 3d at 967-68 (Scales, J., dissenting) (citing Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952); Cragin v. Ocean & Lake Realty Co., 133 So. 569, 573-74 (Fla. 1931)).  This untenable extension of an equitable, judicial doctrine into an area of law expressly governed by legislative action veers perilously close to violating the separation of powers.  Nonetheless, the majority opinion of this Court fails to recognize these concerns and justifies the imposition of Singleton's equitable focus onto the statute of limitations by simply reviewing the decisions of federal and Florida courts that have reached this same conclusion without acknowledging the critical distinctions between res judicata and the statute of limitations.

I recognize the concern raised by this Court and others regarding the need to avoid encouraging delinquent borrowers from abusing the lending process by remaining in default after an initial foreclosure action is dismissed.  See Singleton, 882 So. 2d at 1008; see also Fairbank's Capital Corp. v. Milligan, 234 Fed. Appx. 21, 24 (3d Cir. 2007) (relying on Singleton and seeking to avoid "encourag[ing] a

delinquent mortgagor to come to a settlement with a mortgagee on a default in order to later insulate the mortgagor from the consequences of a subsequent default"). Nonetheless, these legitimate policy concerns should not outweigh the established law of this State. In light of the narrow holding of <u>Singleton</u>, I fear that its expansion today to a case involving a previous dismissal (presumably) without prejudice and no clear reinstatement of the mortgage terms in either the note or the facts of this limited record will lead to inequitable results. Just as the courts should not encourage mortgage delinquency, so too should they avoid encouraging lenders from abusing Florida law and Floridians by "retroactively reinstating" mortgages after many of those lenders initially slept on their own rights to seek foreclosures. <u>See</u> Bernhard, <u>supra</u>, at 27. Therefore, I concur in result only.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

      Fifth District - Case No. 5D12-3823

      (St. Johns County)

Kendall B. Coffey, Jeffrey B. Crockett, and Daniel Frederick Blonsky of Coffey Burlington, P.L., Miami, Florida; Dineen Pashoukos Wasylik of Dineen Pashoukos Wasylik, P.A., Tampa, Florida; Thomas R. Pycraft, Jr. of Pycraft Legal Services, LLC, Saint Augustine, Florida; and Michael Alex Wasylik of Ricardo & Wasylik, PL, Dade City, Florida,

      for Petitioner Lewis Brooke Bartram

Paul Alexander Bravo of P.A. Bravo, Coral Gables, Florida,

      for Petitioner Gideon M.G. Gratsiani

Joel Stephen Perwin of Joel S. Perwin, P.A., Miami, Florida,

>   for Petitioner The Plantation at Ponte Vedra, Inc.

Michael Darren Starks and Kelly Overstreet Johnson of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Orlando, Florida; William Power McCaughan, Stephanie N. Moot and Karen Poy Finesilver of K&L Gates LLP, Miami, Florida; and David R. Fine of K&L Gates LLP, Harrisburg, Pennsylvania,

>   for Respondent U.S. Bank National Association

Lynn Drysdale of Jacksonville Area Legal Aid, Inc., Jacksonville, Florida; Thomas A. Cox of The National Consumer Law Center, Portland, Maine; J.L. Pottenger, Jr. of Jerome N. Frank Legal Services Organization, New Haven, Connecticut; and James C. Sturdevant of The Sturdevant Law Firm, San Francisco, California,

>   for Amici Curiae National Association of Consumer Advocates, The National Consumer Law Center, and The Jerome N. Frank Legal Services Organization

Steven Michael Siegfried, Nicholas David Siegfried, and Nicole Reid Kurtz of Siegfried, Rivera, Hyman, Lerner, De La Torre, Mars & Sobel, P.A., Coral Gables, Florida; and Todd L. Wallen of The Wallen Law Firm, P.A., Coral Gables, Florida,

>   for Amicus Curiae Community Associations Institute

John Granville Crabtree, George Richard Baise, Jr., and Brian Carson Tackenberg of Crabtree & Associates, P.A., Key Biscayne, Florida; Alice Maria Vickers of Florida Alliance for Consumer Protection, Tallahassee, Florida; Kimberly Laura Sanchez of Community Legal Services of Mid-Florida, Orlando, Florida; Sarah Elizabeth Mattern of Brevard County Legal Aid, Inc, Rockledge, Florida; and Peter P. Sleasman of Florida Legal Services Inc., Newberry, Florida,

>   for Amici Curiae Florida Alliance for Consumer Protection, Brevard County Legal Aid, and Consumer Umbrella Group of Florida Legal Services

Andrew David Manko and John Stewart Mills of The Mills Firm, P.A., Tallahassee, Florida,

>   for Amici Curiae Upside Property Investment, LLC, Signature Land, Inc., Upside Property Enterprises, Inc., and The Lynne B. Preminger Living Trust

Major Best Harding and John R. Beranek of Ausley McMullen, Tallahassee, Florida; and John Russell Hargrove of Hargrove Pierson & Brown P.A., Boca Raton, Florida,

for Amicus Curiae Baywinds Community Association, Inc.

Peter David Ticktin, Timothy Richard Quinones, and Kendrick Almaguer of The Ticktin Law Group, P.A., Deerfield Beach, Florida,

for Amici Curiae Bradford and Cheri Langworthy, and The Ticktin Law Group, P.A.

Robert Rex Edwards and Jessica Pierce Quiggle of Robertson, Anschutz & Schneid, PL, Boca Raton, Florida; Melissa A. Giasi and Richard Slaughter McIver of Kass Shuler, P.A., Tampa, Florida; Shaib Yariel Rios and Curtis James Herbert of Brock and Scott PLLC, Fort Lauderdale, Florida; Andrea Rachael Tromberg of Gladstone Law Group, P.A., Boca Raton, Florida; Elizabeth Redchuk Wellborn of Elizabeth R. Wellborn, P.A., Deerfield Beach, Florida; Michelle Garcia Gilbert and Jennifer Lima-Smith of Gilbert Garcia Group, P.A., Tampa, Florida,

for Amicus Curiae American Legal and Financial Network

Robert Mark Brochin, Joshua Charles Prever, and Brian Michael Ercole of Morgan, Lewis & Bockius LLP, Miami, Florida,

for Amicus Curiae Mortgage Bankers Association

David William Rodstein of Padula Hodkin, PLLC, Boca Raton, Florida,

for Amicus Curiae US Financial Network